## CIRCUIT COURT OF THE CITY OF NORFOLK

RML Corp.

v.

Lincoln Window
Products, Inc., et al.

Case No. (Law) CL03-1885

December 3, 2004

BY JUDGE NORMAN A. THOMAS

In this law action, RML Corporation ("RML") sues fifteen separate business entities. It seeks recompense in the amount of $4,000,000.00 plus attorney's fees and costs associated with its defense and settlement of claims

arising from litigation concerning the Bay Point Condominiums in Norfolk, Virginia.

In the Motion for Judgment, *inter alia*, RML alleges that it developed and built the Bay Point Condominiums. In 1999, the Board of Directors of Bay Point Condominium Association, Inc., and Bay Point Condominium Association, Inc., sued RML along with other corporations associated with the construction of those condominiums. RML contends that, in the previous litigation, the plaintiffs made claim for damages suffered as a result of water intrusion into the condominium buildings caused by "the actions or omissions of RML's subcontractors and material suppliers." *See*, Motion for Judgment, paragraphs 1 and 2; *and see, Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, Norfolk Circuit Court, At Law No. CL99-475 ("the previous litigation"). The instant defendants represent a collection of those subcontractors and material suppliers.

RML alleges herein that, during the previous litigation, it filed third-party motions for judgment against all of the named defendants "with whom RML was in privity of contract." *See*, Motion for Judgment, paragraph 4. RML also alleges that, in the previous litigation, it requested "that all of the named defendants defend, indemnify, and hold it harmless from the allegations" of that action and "vouched-in those defendants under common law and § 8.2-607 of the Code of Virginia." *See*, Motion for Judgment, paragraph 5. RML contends that none of the defendants took steps to defend or indemnify it in the previous litigation and that RML eventually nonsuited the third-party motions for judgment. RML now states that it ultimately settled the previous litigation through a judgment for $4,000,000.00 that now has been "marked satisfied . . . in exchange for valuable consideration." *See*, Motion for Judgment at paragraphs 6 and 7.

The previous litigation yielded a number of published opinions from this Court. Those opinions pertained primarily to issues respecting water intrusion into Bay Point Condominium buildings allegedly caused by improper use and installation on those buildings of a defective, synthetic exterior cladding material referred to as Exterior Insulation Finish System ("EIFS"). *See, Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 52 Va. Cir. 432 (Norfolk 2000); *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 54 Va. Cir. 422 (Norfolk 2001); and *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir. 295 (Norfolk 2002).

In this litigation, RML seeks contribution or indemnity from each of the defendants, jointly and severally, for the value of its settlement with the plaintiffs in the previous litigation and its attorney's fees and costs incurred therein. In a total of fifty-six counts, RML asserts causes of action against one

or more of the defendants sounding in negligence, fraud, breach of express warranties, breach of implied warranties, breach of U.C.C. implied warranties, violation of the Virginia Consumer Protection Act, implied contractual indemnity, and equitable indemnity. Please note that, in this and future opinions, the Court will refer to individual counts of the Motion for Judgment by the number RML assigned to them. However, because RML listed two separate counts as "Count XII" (Motion for Judgment, pages 24 and 25) and two separate counts as "Count LVI" (Motion for Judgment, pages 72 and 73), several of RML's counts are misnumbered. Where necessary to do so in referring to causes of action numbered by RML as "Count XII" and "Count LVI," the Court will take those measures appropriate to avoid confusion by referring to specifically to the count number, the defendant, and the cause of action asserted therein.

In this letter opinion, the Court will confine itself to rulings upon the demurrers to RML's negligence counts filed by defendants Lincoln Wood Products, Inc. ("Lincoln"), Count II; Eastern Insulation & Supply Corporation ("Eastern"), Counts II and XXXIII; M. W. Patriot Manufacturing, Inc. ("Patriot"), Count VI; Greenwich Supply Corp. ("Greenwich"), Counts VI, XIV, and XVIII; Peachtree Doors & Windows, Inc. ("Peachtree"), Count X; Scott Lowery, t/a Lowery Construction ("Lowery"), Count XXI; D. M. Barbini Contracting, Inc. ("Barbini"), Count XXX; East Coast Cedar, Inc. ("East Coast"), Count XXXVI; and Carpet Fashions, Inc., t/a Mill End Carpet Shop ("Mill End"), Count LII. RML also makes negligence claims against the following defendants that were served with the Motion for Judgment yet did not file demurrers: Michael Anderson and Angela Hudson, t/a Custom Homes of Virginia ("Custom Homes"), Count XXIV; McDaniels Roofing Corporation ("McDaniels"), Count XLIII; and Daniel Harvey Gay, Sr., t/a Pro-Glass ("Gay"), Count XLIX.

This letter opinion will discuss generally these non-demurring defendants and the negligence claims RML makes against them. The Court ultimately will decide the negligence counts against each of them in accordance with the decisional principles announced herein.

RML categorizes the named defendants as follows: Lincoln as in the business of manufacturing, distributing, selling, and marketing windows and sliding glass doors; Patriot as in the business of manufacturing, distributing, selling, and marketing windows and siding glass doors; Greenwich as in the business of supplying Patriot windows, as an installer of Patriot and/or Lincoln sliding glass doors, as in the business of manufacturing, distributing, selling, and marketing doors, and as an installer of doors; Eastern as in the business of supplying Lincoln windows, as an installer of Patriot and/or

Lincoln sliding glass doors, and as an installer of doors; Lowery as an installer of Patriot and/or Lincoln windows and as providing labor for the installation of decking; Custom Homes as an installer of Patriot and/or Lincoln windows and as providing labor for the installation of decking; Barbini as an installer of Patriot and/or Lincoln windows and as providing labor for the installation of decking; Peachtree as in the business of manufacturing, distributing, selling, and marketing of doors; McDaniels as an installer of roofing materials; Gay as providing materials and labor for the installation of decking materials; East Coast as providing materials and labor for the installation of decking materials; and Mill End as providing materials and labor for the installation of decking materials. *See*, Motion for Judgment at paragraphs 8-15. Future letter opinions or orders will provide the Court's decisions on other pending demurrers, motions, and pleas filed by one or more of the defendants. All demurrers, motions, and pleas awaiting the Court's decisions were argued by counsel on September 7, 2004. The Court received, reviewed, and has considered briefs filed by RML and several of the defendants on those pending matters.

RML alleges that it "contracted with" Lowery, Custom Homes, Barbini, Greenwich, Eastern, McDaniels, Gay, East Coast, and Mill End in one or another capacity. *See*, Motion for Judgment, paragraphs 9, 10, 12, 13, 14, and 15; *see also* paragraphs 129, 136, 144, 152, 159, 167, 175, 205, 213, 221, 228, 236, 244, 251, 259, 267, 297, 305, 313, 343, 351, 359, 366, 374, 382, 395. In the negligence counts regarding the following defendants, RML alleges a direct contractual relationship respecting the product or service at issue: Count XVIII (Greenwich, installation of doors and sliding glass doors), Count XXI (Lowery, installation of windows and decking materials), Count XXIV (Custom Homes, installation of windows and decking materials), Count XXX (Barbini, installation of windows and decking materials), Count XXXIII (Eastern, installation of doors and sliding glass doors), Count XXXVI (East Coast, installation of decking systems), Count XLIII (McDaniels, installation of roofs, roofing systems, and flashing), Count XLIX (Gay, furnishing materials for and installing decking systems), and Count LII (Mill End, furnishing materials for and installing decking systems). However, in the negligence counts regarding the following defendants, RML does not allege a direct contractual relationship respecting the product or service at issue: Count II (Lincoln and Eastern, manufacture and distribution of windows and sliding glass doors), Count VI (Patriot, manufacture of windows and sliding glass doors, and, Greenwich, distribution of windows and sliding glass doors), Count X (Peachtree, manufacture and distribution of doors), and Count XIV (Greenwich, manufacture and distribution of doors).

*Blacks Law Dictionary, Revised* (4th ed. 1976) defines privity of contract as "that connection or relationship which exists between two or more contracting parties. It is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect of the matter sued on." *See also, Metro Panel Systems, Inc. v. Sordoni Skanska Construction Co.*, 56 Va. Cir. 399, 401 (Norfolk 2001). RML offers a much more expansive definition of that legal concept, arguing that it is in privity of contract with each of the defendants even absent "a direct contractual relationship" with them. In support of its position RML cites *Padgett v. Bon Air Realty Co.*, 150 Va. 841, 847, 143 S.E.2d 291, 293 (1928). However, *Padgett* did not purport to change or expand the definition of privity of contract in Virginia. To the contrary, in relevant part, the decision explored whether a non-contracting party litigant could sue upon a real estate sales contract as a third-party beneficiary. *Id.* This Court declines RML's invitation to expand the above-noted longstanding definition of privity of contract. Thus, with respect to some of the defendants for some of their products or services, RML alleges to be in privity of contract, and, as to others, it does not.

In undertaking to decide the several demurrers, the Court must accept as true those factual allegations properly pleaded in the Motion for Judgment and such other facts as may be fairly inferred from those allegations. *See, Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003); *Van Deusen v. Snead*, 247 Va. 324, 326, 441 S.E.2d 207, 208 (1994). A demurrer tests the legal sufficiency of a pleading and does not entail a court's evaluation of the merits of a claim. A demurrer "does not admit the correctness of the pleader's conclusions of law." *Moore v. Maroney*, 258 Va. 21, 23, 516 S.E.2d 9, 10 (1999); *see also, Welding, Inc. v. Bland County Service Authority*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001); *Ward's Equipment, Inc. v. New Holland of North America, Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

Thus, this Court's consideration of the pending demurrers respecting RML's negligence claims requires a determination whether RML properly pleads a valid cause of action against each demurring defendant. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996).

The Court sustains the demurrers to Count II (Lincoln and Eastern), Count VI (Patriot and Greenwich), Count X (Peachtree), and Count XIV (Greenwich) without leave to amend the Motion for Judgment as to those counts.

In *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988), the Court definitively ruled that, absent privity of contract, no cause of action exits in tort for recovery of economic losses

allegedly incurred as a result of another's negligence. *Id.* at 422-24, 374 S.E.2d at 57, 58. The Court continues to hold fast to the *Sensenbrenner* determination that no such cause of action exists in Virginia. *See, Rotonda Condominium Unit Owners Association v. Rotonda Associates*, 238 Va. 85, 380 S.E.2d 876 (1989); *Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593 (1989); *Ward v. Ernst & Young*, 246 Va. 317, 435 S.E.2d 628 (1993); *Filak v. George*, 267 Va. 612, 594 S.E.2d 610 (2004).

In this case, RML seeks contribution or indemnity for the value of its settlement with the plaintiffs in the previous litigation and thus, by definition, seeks from the defendants compensation for purely economic loses. *See, Blake Construction Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987); *and see, Metro Panel Systems, Inc. v. Sordoni Skanska Construction Co.*, 56 Va. Cir. 399, 404 (Norfolk 2001). Moreover, even the original loss for which RML herein seeks contribution or indemnity, *i.e.*, diminution in value of and costs to repair the Bay Point Condominiums due to water intrusion, constituted an economic loss rather than an "injury to property." *See, Sensenbrenner*, 236 Va. at 423, 424, 374 S.E.2d 57, 58; *Rotonda*, 238 Va. at 90, 380 S.E.2d at 879. This holding conforms squarely with the decisions of this circuit in the previous litigation and other circuits in similar litigation. *Bay Point Condominium Association, Inc. v. RML Corp.*, 52 Va. Cir. 432, 434-36 (Norfolk 2000); *and see, Murray v. Royal Const. Co. and Dryvit Systems, Inc.*, 61 Va. Cir. 643 (Franklin County 2002); *Lesner Pointe Condominium v. Harbour Point Building Corp.*, 61 Va. Cir. 609 (Virginia Beach 2002).

Therefore, because no cause of action exists sounding in tort for negligence as to those defendants with which RML did not allege a direct contractual relationship, the demurrers respecting the above-referenced counts must be sustained without leave to amend.

As to those counts wherein RML alleges a direct contractual relationship with the named defendant respecting the product or service at issue, the demurrers are sustained with leave to amend. *See,* Count XVIII (Greenwich), Count XXI (Lowery), Count XXX (Barbini), Count XXXIII (Eastern), Count XXXVI (East Coast), and Count LII (Mill End).

In *Ward v. Ernst & Young*, 246 Va. at 324-26, 435 S.E.2d at 631-32, the Court discussed its previous holdings in *Blake, Sensenbrenner, Rotonda,* and *Copenhaver* and, on the issue of recovery of economic losses under a negligence theory, stated that "when privity exists, economic losses may be recovered under a negligence theory." *Id.* 246 Va. at 326, n. 3, 435 S.E.2d at 632, n. 3. Prior to that footnote, the Court approvingly quoted the following language from its *Rotonda* opinion:

[T]he Association sought only to recover damages for the economic losses associated with the costs of repairing the defects in the common elements. Such economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations. The law of contracts provides the sole redress for such claims.[n2]

n2 These observations cannot fairly be interpreted to mean that economic losses are never recoverable in tort. The language employed here has its predicate in the tort alleged in the Association's negligence count; it does not purport to foreclose a right to recover an economic loss in other tort actions such as those for fraud, conspiracy to injure another in a trade, business, or profession, or tortious interference with contract.

*Ward*, 246 Va. at 325, 435 S.E.2d at 632, *quoting Rotonda*, 238 Va. at 90, 380 S.E.2d at 879.

In this case, RML asserts that *Ward's* footnote 3 language entitles it to maintain a cause of action for negligence against those defendants with which it maintained a direct contractual relationship. However, mere invocation of that footnote's language does not end the inquiry required to decide these demurrers. The Court necessarily must determine whether RML's entitlement to proceed on a negligence theory arises *ex contractu* or *ex delicto*.

In *Glenn v. National Housing Building Corp.*, 50 Va. Cir. 71, 88-89 (Virginia Beach 1999), the Court referenced *Ward's* footnote 3 and the apparent conflict between that passage's language and the holdings in both *Rotonda* and *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998). The Court noted that, in the aftermath of *Rotonda*, at least two judicial circuits had concluded that, "even where a party asserts privity of contract, the sole redress for economic damages is the law of contracts." *Id.* at 89. The Court went on to label *Ward's* footnote 3 as *dicta* and to openly question "how one might tend to reconcile the footnote in *Ward*" with the Court's prior determination that economic losses are not recoverable in tort, and it then concluded its discussion as follows:

Virginia law generally forbids a claimant from attempting to transform a cause of action *ex contractu* into a tort claim where the duties between parties arise solely by virtue of contract. See *McDevitt*, 256 Va. at 558. The rule is apparently different in cases involving economic damages where there is privity of contract;

though the Supreme Court has not explained why this should be so.

*Id.*, at 88-89.

Thus, the Court in *Glenn* effectively ruled that *Ward's* footnote 3 creates an *ex delicto* cause of action for negligence when privity of contract exists and permits the recovery of economic losses in such an action. This court is not so convinced.

In *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983), the Court discussed the difference between damages recoverable in tort and contract breach actions, and its determination to continue adherence to the distinctions between the two:

> Damages are awarded in tort actions to compensate the plaintiff for all losses suffered by reason of the defendant's breach of some duty imposed by law to protect the broad interests of social policy . . . damages for breach of contract, on the other hand, are subject to the overriding principal of compensation. They are within the contemplation and control of the parties in framing their agreement. They are limited to those losses which are reasonably foreseeable when the contract is made. These limitations have lead to "more or less inevitable efforts of lawyers to turn every breach of contract into a tort." [Footnote omitted.] W. Prosser, *Handbook of the Law of Torts*, section 92 (4th ed. 1971) at p. 614.

> The overwhelming weight of authority continues to resist this tendency.

*Kamlar*, 224 Va. at 706, 299 S.E.2d at 517. *See also, Blake*, 233 Va. at 34-35, 353 S.E.2d at 726-27; *Sensenbrenner*, 236 Va. at 423-24, 374 S.E.2d at 57; *Rotonda*, 238 Va. at 90, 380 S.E.2d at 876, 879; *Ward*, 246 Va. at 324-25, 135 S.E.2d at 631-32.

In *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998), within the context of a construction contract dispute wherein the plaintiff ("RMA") alleged fraud and constructive fraud, the Court explored the distinction between tort and contract breach actions:

> In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained. In *Oleyar v. Kerr, Trustee*, 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976)

(quoting *Burks' Pleading and Practice*, Section 234 at 406 (4th ed. 1952)), we distinguished between actions for tort and contract: "If the cause of complaint be for an act of omission or nonfeasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the actions is one of tort."

*RMA*, 256 Va. at 558, 507 S.E.2d at 347. The *McDevitt* court went on to conclude that, "a tort action cannot be based solely on a negligent breach of contract." 256 Va. at 559, 507 S.E.2d at 347.

In light of the Virginia Supreme Court's repeated recognition of legal principles distinguishing those duties owed between individuals in tort and contract and the distinct causes of action arising therefrom, this Court cannot conclude that *Ward's* footnote 3 signaled a departure from that longstanding jurisprudence. *See, Filak v. George*, 267 Va. at 618-19, 594 S.E.2d at 613-14 (2004). Therefore, while economic losses lawfully may be recovered when privity of contract exists, their availability to RML in this case for the defendant's alleged negligent breach of contractual duties turns on the specific language of the parties' contracts governing their relationships in the construction of the Bay Point Condominiums. With respect to RML's negligence claims, the defendants owed RML no duty outside the scope of those contractual relationships.

RML does not contend in the Motion for Judgment that its contract with any demurring defendants contains language providing for the recovery of the economic losses sued for in this case. Therefore, the Court must sustain the demurrers regarding Motion for Judgment Counts XVIII, XXI, XXX, XXXIII, XXXVI, and LII with leave to amend. RML may file an Amended Motion for Judgment respecting those counts within ten business days of the Order incorporating the Court's decisions as announced in this letter opinion.

The Court will proceed to enter an Order incorporating the decisions of this letter opinion, noting RML's objections thereto and, as to the Court's decision to grant RML leave to amend certain counts of the Motion for Judgment, noting the objections of Greenwich, Lowery, Barbini, Eastern, East Coast, and Mill End. The Court will dispense with counsel signatures pursuant to Rule 1:13 of the Rules of the Supreme Court of Virginia.

554

April 1, 2005

By Judge Joseph A. Leafe

In this law action, RML Corporation sues fifteen separate business entities. It seeks recompense in the amount of $4,000,000.00 plus attorney's fees and costs associated with its defense and settlement of claims arising from litigation concerning the Bay Point Condominiums in Norfolk, Virginia.

In its Motion for Judgment, *inter alia*, RML alleges that it developed and built the Bay Point Condominiums. In 1999, the Board of Directors of Bay Point Condominium Association, Inc., and Bay Point Condominium Association, Inc., sued RML along with other corporations associated with the construction of those condominiums. RML contends that, in the previous litigation, the plaintiffs made claim for damages suffered as a result of water intrusion into the condominium buildings caused by "the actions or omissions of RML's subcontractors and material suppliers." *See* Motion for Judgment, paragraphs 1 and 2; *and see Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, Norfolk Circuit Court, At Law No. CL99-475 ("the previous litigation"). The instant defendants represent a collection of those subcontractors and material suppliers.

The defendants include: (1) Lincoln Window Products, Inc. ("Lincoln"), (2) Patriot Manufacturing, Inc. ("Patriot"), (3) Greenwich Supply Corp. ("Greenwich"), (4) Eastern Insulation & Supply Corp. ("Eastern"), (5) Scott Lowery, t/a Lowery Construction ("Lowery"), (6) Michael Anderson and Angela Hudson, t/a Custom Homes of Virginia ("Custom Homes"), (7) D. M. Barbini Contracting, Inc. ("Barbini"), (8) Peachtree Doors & Windows, Inc. ("Peachtree"), (9) Thomas Bronson ("Bronson"), (10) McDaniels Roofing Corp. ("McDaniels"), (11) Daniel Harvey Gay, Sr., t/a Pro-Glass ("Gay"), (12) East Coast Cedar, Inc. ("East Coast"), and (13) Carpet Fashions, Inc., t/a Mill End Carpet Shop ("Mill End").

RML categorizes the named defendants as follows: Lincoln as in the business of manufacturing, distributing, selling, and marketing windows and sliding glass doors; Patriot as in the business of manufacturing, distributing, selling, and marketing windows and siding glass doors; Greenwich as in the business of supplying Patriot windows, as an installer of Patriot and/or Lincoln sliding glass doors, as in the business of manufacturing, distributing, selling, and marketing doors, and as an installer of doors; Eastern as in the business of supplying Lincoln windows, as an installer of Patriot and/or Lincoln sliding glass doors, and as an installer of doors; Lowery as an installer of Patriot and/or Lincoln windows and as providing labor for the installation

of decking; Custom Homes as an installer of Patriot and/or Lincoln windows and as providing labor for the installation of decking; Barbini as an installer of Patriot and/or Lincoln windows and as providing labor for the installation of decking; Peachtree as in the business of manufacturing, distributing, selling, and marketing of doors; Bronson as an installer of roofing materials; McDaniels as an installer of roofing materials; Gay as providing materials and labor for the installation of decking materials; East Coast as providing materials and labor for the installation of decking materials; and Mill End as providing materials and labor for the installation of decking materials. *See,* Motion for Judgment at paragraphs 8-15.

RML alleges herein that, during the previous litigation, it filed third-party motions for judgment against all of the named defendants "with whom RML was in privity of contract." *Motion for Judgment,* paragraph 4. RML also alleges that, in the previous litigation, it requested "that all of the named defendants defend, indemnify, and hold it harmless from the allegations" of that action and "vouched-in those defendants under common law and § 8.2-607 of the Code of Virginia." *Motion for Judgment,* paragraph 5. RML contends that none of the defendants took steps to defend or indemnify it in the previous litigation, where RML eventually nonsuited the third-party motions for judgment. RML now states that it ultimately settled the previous litigation through a judgment for $4,000,000.00 that now has been "marked satisfied . . . in exchange for valuable consideration." *Motion for Judgment,* paragraphs 6 and 7.

The previous litigation yielded a number of published opinions from this Court. Those opinions pertained primarily to issues respecting water intrusion into Bay Point Condominium buildings allegedly caused by improper use and installation on those buildings of a defective, synthetic exterior cladding material referred to as Exterior Insulation Finish System ("EIFS"). *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.,* 52 Va. Cir. 432 (Norfolk 2000) (Leafe, J.); *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.,* 54 Va. Cir. 422 (Norfolk 2001) (Leafe, J.); and *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.,* 57 Va. Cir. 295 (Norfolk 2002) (Leafe, J.).

In this litigation, RML seeks contribution or indemnity from each of the defendants, jointly and severally, for the value of its settlement with the plaintiffs in the previous litigation and its attorney's fees and costs incurred therein. In a total of fifty-six counts, RML asserts causes of action against one or more of the defendants sounding in negligence, fraud, breach of express warranties, breach of implied warranties, breach of U.C.C. implied warranties, violation of the Virginia Consumer Protection Act, implied contractual

indemnity, and equitable indemnity. In a previous letter opinion in this case, Judge Norman A. Thomas sustained the defendants' demurrers to RML's negligence cause of action. *RML v. Lincoln Window Products, Inc., et al.,* Circuit Court of Norfolk, At Law No. CL03-1885 (December 3, 2004) (Thomas, J.). In this letter opinion, the Court will first address RML's motion for reconsideration or clarification of the findings of the December 3, 2004, letter opinion. Then, the Court will rule on the other demurrers and special pleas that were argued and taken under advisement on September 7, 2004.

## I. Motion for Reconsideration or Clarification

In the December 3, 2004, letter opinion, this Court found that RML did not allege a direct contractual relationship with Greenwich or Eastern in Count II (Eastern), Count VI (Greenwich), and Count XIV (Greenwich). The Court then dismissed the negligence counts relating to non-privity defendants with prejudice, while the negligence counts relating to the privity defendants were dismissed with leave to amend. In its motion, RML is asking the Court to reconsider or clarify the finding by the Court that privity has not been alleged with respect to Eastern or Greenwich.

The Court finds that the general language in paragraph 4 of the Motion for Judgment, coupled with the specific language in Count II, Count VI, and Count XIV sufficiently alleged privity against Greenwich and Eastern. *See Motion for Judgment*, paragraphs 4, 23-25, 47-49, and 95-96. Thus, the negligence counts against Greenwich and Eastern are now moved into the category with privity defendants and, as such, the demurrers are sustained with leave to amend. The Court's findings in the December 3, 2004, letter opinion as to the privity defendants are hereby incorporated to these counts. RML may file an Amended Motion for Judgment respecting those counts within fourteen business days of the Order incorporating the Court's decisions as announced in this letter opinion.

## II. The Demurrers

## A. The Standard for a Demurrer

A demurrer tests the legal sufficiency of the factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). When ruling on a demurrer, the Court must not evaluate or decide the actual merits of a claim. *Id.* According to the Rules of the Supreme Court, the pleading

"shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d); *See also Miller v. Grier S. Johnson, Inc.*, 191 Va. 768, 776, 62 S.E.2d 870, 874 (1951). The Supreme Court of Virginia has stated that trial courts should not incorrectly short-circuit litigation at the pretrial stage by deciding the dispute without permitting the parties to have a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Further, in deciding whether to sustain the demurrers, the Court must accept as true all facts and reasonable inferences drawn from RML's Motion for Judgment. *See Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988).

## B. Rule 1:4(d)

Several of the defendants filed demurrers claiming RML's Motion for Judgment fails to clearly inform the defendants of the true nature of the claims against it and further fails to state facts constituting causes of action. These parties include Eastern, Greenwich, Lincoln, and Lowery.

In light of the standard for sustaining a demurrer and after a thorough review of the pleadings by RML, the Court finds that RML has stated sufficient facts in its Motion for Judgment to survive a demurrer. When ruling on a demurrer, the Court must take as true all the allegations in the Motion for Judgment. *Id.* RML has pleaded sufficient facts to allow the case to proceed. Thus, the defendants' demurrers based on Rule 1:4(d) of the Rules of the Virginia Supreme Court are overruled.

## C. Virginia Consumer Protection Act ("VCPA")

RML alleges violations of the VCPA in Count III (Lincoln and Eastern), Count VII (Patriot and Greenwich), Count XI (Peachtree), and Count XV (Greenwich). Each of these defendants filed demurrers to RML's cause of action for violation of the VCPA arguing that the VCPA only applies to consumer transactions. This Court ruled on a similar VCPA issue in the previous litigation. *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 52 Va. Cir. 432, 445-46 (Norfolk 2000) (Leafe, J.). The Court is not persuaded by RML's arguments to deviate from the legal reasoning in its previous ruling.

The VCPA makes it unlawful for a supplier in connection with a consumer transaction to engage in certain acts, including: "[m]isrepresenting that goods or services have certain qualities, characteristics, ingredients, uses,

or benefits . . . [m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model . . . [and] [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. . . ." Va. Code Ann. § 59.1-200. Any person who suffers loss as the result of a violation of the VCPA may recover actual damages, reasonable attorney's fees, and court costs from the offending party. *Id.* § 59.1-204. Thus, in order to determine whether these transactions are within the scope of the VCPA, one must examine whether the subject transactions constitute "consumer transactions" as those terms are defined under the VCPA.

The VCPA defines "consumer transaction" as, in pertinent part, "[t]he advertisement, sale . . . or offering for sale . . . of goods or services to be used primarily for personal, family, or household purposes." *Id.* § 59.1-198. "Goods" are defined as "all real, personal, or mixed property, tangible or intangible." *Id.* Finally, the term "supplier" is defined as "a seller . . . who advertises, solicits, or engages in consumer transactions, or a manufacturer or distributor who advertises and sells . . . goods or services to be resold . . . by other persons in consumer transactions." *Id.*

In the present case, the sale of the goods (windows, sliding doors, doors, and roofing and flashing) from the defendants to RML is best characterized as a commercial transaction. The goods were not sold to RML for personal, family, or household purposes. The goods were sold from the defendants to RML for use as component parts in the construction of the condominium complex. Such use cannot be characterized as "personal, family, or household" use. The transactions between the defendants and RML are commercial transactions involving non-consumer goods and are, therefore, not governed by the various provisions of the VCPA.

Thus, the Court sustains the demurrers to Count III (Lincoln and Eastern), Count VII (Patriot and Greenwich), Count XI (Peachtree), and Count XV (Greenwich), without leave to amend the Motion for Judgment as to those counts.

### D. Uniform Commercial Code Implied Warranties

RML alleges breaches of U.C.C. implied warranties in Count I (Lincoln and Eastern, manufacturer and distributor of windows and sliding glass doors), Count V (Patriot and Greenwich, manufacturer and distributor of windows and sliding glass doors); Count IX (Peachtree, manufacturer of doors); and Count XIII (Greenwich, manufacturer of doors). Each of these defendants filed demurrers to RML's cause of action for breach of U.C.C. implied warranties. This Court ruled on a similar U.C.C. implied warranties issue in the previous

litigation. *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 52 Va. Cir. 432, 445-46 (Norfolk 2000) (Leafe, J.). The Court is not persuaded to deviate from the legal reasoning in its previous ruling.

As a preliminary matter, the nature of the alleged warranty agreements, whether they were for services or goods, cannot be decided at the demurrer stage and will be treated as agreements for the sale of goods. *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456 (4th Cir. 1983). Thus, the U.C.C. provides the governing statutes.

In the December 3, 2004, letter opinion in this case, the Court found that RML seeks compensation for purely economic losses from the defendants. *RML v. Lincoln Window Products, Inc., et al.*, Circuit Court of Norfolk, At Law No. CL03-1885 (December 3, 2004) (Thomas, J.).

Several of the defendants argue that the absence of privity between themselves and RML bars RML's claims for consequential economic loss under a breach of warranty theory. Va. Code Ann. § 8.2-318 reads:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods. . . .

Notwithstanding the language of Va. Code Ann. § 8.2-318, the Supreme Court of Virginia has held that privity of contract is required for recovery of consequential economic loss damages in a claim for breach of warranty. *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 254 Va. 240, 491 S.E.2d 731 (1997). In *Beard*, the Court addressed the question of whether privity is required to recover consequential economic loss damages under Va. Code Ann. § 8.2-715(2) due to breach of warranty, notwithstanding the language of Va. Code Ann. § 8.2-318.

Va. Code Ann. § 8.2-715(2) provides:

Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to

know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

The *Beard* Court held that Va. Code Ann. § 8.2-715(2) requires privity of contract for the recovery of consequential economic loss damages incurred as a result of a breach of warranty by the seller. *Beard*, 254 Va. at 245, 491 S.E.2d at 733-34. The Court next resolved the apparent conflict between Va. Code Ann. § 8.2-318 and § 8.2-715(2) by applying the rule of statutory construction that, if one section of a statute addresses a subject in a general way and the other section speaks to part of the same subject in a more specific manner, the latter prevails. It should be noted that the Supreme Court of Virginia expressly limited its discussion to breach of warranty claims for consequential economic loss damages, stating, "we assume that the Court of Appeals concluded that the economic loss damages claimed by Beard were consequential damages rather than direct damages." *Beard*, 254 Va. at 244, 491 S.E.2d at 733. The Court also stated:

The general subject of § 8.2-318 is the ability to raise the common law requirement of privity as a defense. . . . Section 8.2-715(2)(a) does not address the general subject of the common law privity requirement's effect on the ability of a litigant to maintain an action for breach of warranty. It is limited to that part of the litigation dealing with the damages which may be recovered and imposes a contract requirement only where recovery of consequential damages is sought.

*Id.* at 246, 491 S.E.2d at 734. Indeed, the Court's holding is based on the language of Va. Code Ann. § 8.2-715(2), which expressly calls for the existence of a contract between the parties for recovery of consequential damages. Thus, the applicability of the Court's holding in *Beard* is limited to cases where a plaintiff is claiming consequential economic loss damages due to a breach of warranty.

Applying the above stated principles to the facts of the present case, RML may not recover consequential economic loss damages under Va. Code Ann. § 8.2-715(2) absent privity of contract. RML alleges privity with Lowery, Custom Homes, McKenzie, Barbini, Greenwich, Eastern, Argilan, Bronson, McDaniels, Gay, East Coast, and Mill End in one or another

capacity. *See Motion for Judgment*, paragraphs 9, 10, 12, 13, 14 and 15. In the breach of U.C.C. Implied Warranties counts regarding the following defendants, RML alleges a direct contractual relationship respecting the products or services at issue: Count I (Eastern, distributor of windows and sliding glass doors), Count V (Greenwich, distributor of windows and sliding glass doors), Count IX (Peachtree, distributor of doors), and Count XIII (Greenwich, distributor of doors). However, in the breach of U.C.C. Implied Warranties counts regarding the following defendants, RML does not allege a direct contractual relationship respecting the products or services at issue: Count I (Lincoln, manufacturer of windows and sliding glass doors), and Count V (Patriot, manufacturer of windows and sliding glass doors).

In summary, RML alleges privity of contract with the installers and distributors of the windows, doors, sliding glass doors, decking, and roofing and flashing. On the other hand, RML does not allege privity of contract with the manufacturers of such products. Therefore, RML is barred under the Virginia Supreme Court's ruling in *Beard* from asserting any claim for consequential economic loss damages due to breach of warranty under Va. Code Ann. § 8.2-715(2) in Count I against Lincoln and in Count V against Patriot.

RML may still maintain counts for breach of implied warranties against the manufacturers for direct damages. The U.C.C. provides that the measure of direct damages for breach of warranty is as follows: the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. Va. Code Ann. § 8.2-714(2). As opposed to the statute governing consequential damages considered by the Court in *Beard*, the U.C.C.'s provision governing the measure of direct damages in a breach of warranty claim does not condition the award of damages on the existence of a contract. Under Va. Code Ann. § 8.2-318, lack of privity shall be no defense in an action brought against a manufacturer to recover damages for breach of express or implied warranties if the plaintiff is a person whom the manufacturer might reasonably have expected to use or be affected by the goods. Thus, under Va. Code Ann. § 8.2-714(2), RML may assert a claim for direct damages consisting of the difference between the value of the windows, doors, sliding glass doors, decking, and roofing and flashing accepted and the value such products would have had if they had been as warranted, unless the facts of the case show proximate damages of a different amount.

In accordance with the above analysis on consequential and direct economic loss damages, an underlying contract between RML and the

defendants is required for RML to recover consequential economic loss damages under a theory of breach of implied warranty. However, RML may assert a claim for direct damages consisting of the difference between the value of the windows, doors, sliding glass doors, decking, and roofing and flashing accepted and the value such products would have had if they had been as warranted, unless the facts of the case show proximate damages of a different amount.

### E. Implied Contractual Indemnity

Several of the defendants filed demurrers to RML's cause of action for implied contractual indemnity. The defendants rely on *Virginia Elec. & Power Co. v. Wilson*, 221 Va. 979, 277 S.E.2d 149 (1981), which states that "the distinguishing feature of indemnity is that it must necessarily grow out of a contractual relationship." *Id.* at 981-82, 277 S.E.2d at 150. More recently, the Supreme Court of Virginia decided that the builder of a home could not recover damages on the theory of implied indemnity against the manufacturer of an allegedly defective stucco product because it did not arise out of a contractual relationship. *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 528, 579 S.E.2d 188, 193 (2003). Thus, the Court finds that a claim for contractual indemnity must necessarily grow out of a contractual relationship between the two parties.

In the Implied Contractual Indemnity counts, RML alleges a direct contractual relationship respecting the services and products at issue with all the named defendants. *See* Count IV (Lincoln and Eastern, manufacturer and distributor of windows and sliding glass doors); Count VIII (Patriot and Greenwich, manufacturer and distributor of windows and sliding glass doors); Count XII (Peachtree, manufacturer of doors); Count XVI (Greenwich, manufacturer of doors); Count XIX (Greenwich, installation of doors and sliding glass doors); Count XXII (Lowery, installation of windows and decking); Count XXV (Custom Homes, installation of windows and decking); Count XXVIII (McKenzie, installation of windows and decking); Count XXXI (Barbini, installation of windows and decking); Count XXXIV (Eastern, installation of doors and sliding glass doors); Count XXXVII (East Coast, installation of decking); Count XLI (Argilan, installation of roofing and flashing); Count XLIV (McDaniels, installation of roofing and flashing); Count XLVII (Bronson, installation of roofing and flashing); Count L (Gay, distribution and installation of decking); Count LIII (Mill End, distribution and installation of decking).

RML alleges that, as part of the contracts, the defendants impliedly warranted that they would indemnify and hold RML harmless for damages sustained as a result of the failure or defectiveness of their products/services, including any such liability RML suffered as the result of actions against it for damages to person or property or for economic losses. In its brief, RML argues that its claim for implied contractual indemnity is based on the defendants' express and implied warranties. RML relies on *Whittle v. Timesavers*, 614 F. Supp. 115 (W.D. Va. 1985), where the court found that a breach of warranty accompanying a product included an implied obligation to indemnify. *Id.* at 118-19. Thus, RML pleads practically the same cause of action in its Breach of Implied Warranties and Implied Contractual Indemnity counts. At oral arguments, RML stated that, out of an abundance of caution, it was pleaded twice because some courts treat the indemnity relief for breach of implied warranties as a separate implied contractual indemnity cause of action.

The Court sees no reason to raise the relief sought for the breach of implied warranties cause of action in separate counts for breach of implied contractual indemnity. Therefore, the Court sustains the defendants' demurrer as to the implied contractual indemnity counts. RML may proceed with its claim for indemnity as the relief sought under its breach of implied warranties cause of action. *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir. 295, 309-10 (Norfolk 2002) (Leafe, J.) ("The Virginia Supreme Court held that privity is only required in an implied warranty case where the parties are seeking recovery of consequential damages based on the implied contractual indemnity which arises from the breach of the implied warranty.") (citing *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 254 Va. 240, 491 S.E.2d 731 (1997)).

## F. Equitable Indemnity

In Count LIV, RML claims equitable indemnity against "all defendants" under an active/passive theory of indemnity. *Motion for Judgment*, paragraphs 388-93. Several of the defendants filed demurrers to RML's cause of action for equitable indemnity. These parties include: Barbini, East Coast, Eastern, Greenwich, Lincoln, Lowery, Mill End, Patriot, and Peachtree.

The Supreme Court of Virginia has recognized that claims for indemnity may arise in non-contractual cases. *See Philip Morris, Inc. v. Emerson*, 235 Va. 380, 368 S.E.2d 268 (1988) (active negligence precludes a claim of indemnification); *See also Carr v. The Home Ins. Co.*, 250 Va. 427, 463 S.E.2d 457 (1995) ("Equitable indemnification arises when a party without

personal fault, is nevertheless legally liable for damages caused by the negligence of another.").

In the present case, RML alleges that its liability was "passive, secondary, or technical based on the statutory warranties proscribed in Virginia's Condominium Act." *Motion for Judgment*, paragraph 390. A similar claim was made in *Pulte Home Corp.*:

> Pulte states that its claim for indemnification "is based on the theory that any liability incurred by [Pulte] 'would be derivative, constructive, passive, and/or secondary, while the acts and omissions of [Parex] would be the active, direct, and primary cause of Plaintiffs' damages'."

*Pulte Home Corp.*, 265 Va. at 528, 579 S.E.2d at 193. The Supreme Court in *Pulte* followed its earlier ruling in *Carr* stating that, "equitable indemnification arises when a party without personal fault is nevertheless legally liable for damages caused by the negligence of another." *Id.* (quoting *Carr*, 250 Va. at 429, 463 S.E.2d at 458). The Supreme Court also noted that, in *Carr*, "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." *Id.* (quoting *Carr*, 250 Va. at 429, 463 S.E.2d at 458). In the present case, RML cannot rely on the negligence of the defendants as the underlying claim for its equitable indemnity claim, as the Court has sustained demurrers regarding all the negligence counts. *See RML v. Lincoln Window Products, Inc., et al.*, Circuit Court of Norfolk, At Law No. CL03-1885 (December 3, 2004) (Thomas, J.) (sustaining demurrers on RML's negligence counts).

Other circuit courts have ruled that active/passive indemnity "arises between parties from equitable considerations . . . [where] the indemnitee is liable to the injured party because of some positive duty created by statute or common law, however, the actual cause of injury to the third-party was the act of the indemnitor." *Teleglobe USA, Inc. v. USA Global Link, Inc.*, 52 Va. Cir. 553, 558 (Fairfax 1999) (Thacher, J.) (citing *Sanderling v. Donohoe Co.*, 47 Va. Cir. 345, 346 (Fairfax 1998) (McWeeny, J.)) (quoting *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 39 Va. Cir. 107, 114 (Fairfax 1996) (Lee, J.). It is this line of cases that RML relies on for its claim of active/passive equitable indemnity.

RML alleges they were liable to the condominium association based on the statutory warranties proscribed in Virginia's Condominium Act, but the actual cause of the injury was the defendants' products and services. In *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir.

295 (Norfolk 2002) (Leafe, J.), this Court found that the condominium association had suffered total damages of $5,185,000. The Court also found that the defective Outsulation system, Dryvit's EIFS, caused $3,044,000 of those damages. *Id.* RML alleges that the difference in these figures, $2,141,000 of these damages, was caused by alleged defective construction or non-EIFS building materials. *Motion for Judgment*, paragraph 392. (At oral arguments, RML relied on this finding from the previous litigation to satisfy the prerequisite of the initial determination of fault of the defendants.) RML further alleges that "[t]he active or primary responsibility for these non-EIFS related damages lies with the defendants named herein." *Motion for Judgment*, paragraph 393.

Thus, RML has sufficiently alleged a cause of action for active/passive equitable indemnity. RML alleged it was liable to the condominium association because of statutory warranties proscribed in Virginia's Condominium Act and that the actual cause of damages to the condominium association was caused by the subcontractors and suppliers named as defendants performing the actual construction work and providing building materials. *See Motion for Judgment*, paragraphs 391 and 393.

Lowery raised several issues in its demurrer, which it claims bars or limits RML's ability to maintain a cause of action for indemnification. The Court will address each issue in turn.

First, Lowery argues that the right to non-contractual indemnity arises only when a party from whom liability is sought may be liable in tort to the original plaintiff. That the original plaintiff, the condominium association, did not assert any tort claim against Lowery and the applicable statute of limitation and statute of repose has expired. Lowery cites *Norfolk Southern RR. v. Gretakis*, 162 Va. 597, 174 S.E. 841 (1934), for this proposition. The Supreme Court of Virginia addressed this specific issue of contribution and the statute of limitations in *Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 234 Va. 54, 360 S.E.2d 342 (1987). In *Gemco-Ware*, the Supreme Court ruled, "In order for contribution to lie, the injured party's cause of action against the third-party defendant need not be *presently* enforceable; it merely is necessary that the plaintiff, at *some time* in the past, have had an enforceable cause of action against the party from whom contribution is sought." *Id.* at 58, 360 S.E.2d at 344 (emphasis in original); *See also Pulte Home Corp.*, 265 Va. at 529, 579 S.E.2d at 194 ("[W]hile contribution will lie if the injured party's cause of action is not presently enforceable but was enforceable at some time in the past, contribution is unavailable if the injured party never had an enforceable cause of action against the target of the contribution claim."). Thus, the Court finds that the injured party, the

condominium association, at some time in the past had an enforceable cause of action against the defendants.

Second, Lowery argues that RML did not advise Lowery it had entered into serious settlement negotiations with the original plaintiff, the condominium association, nor did it offer Lowery an opportunity to participate. Further, Lowery contends that RML does not allege that it had any actual or potential liability to the original plaintiff nor that the alleged settlement it entered into was reasonable under all the circumstances. At the demurrer stage, the Court must accept as true all facts and reasonable inferences drawn from RML's Motion for Judgment. *See Fox*, 236 Va. 69, 372 S.E.2d 373 (1988). RML alleges that it "requested that all of the named defendants defend, indemnify and hold it harmless from the allegations of the Plaintiffs in that action and vouched-in those defendants under common law and § 8.2-607 of the Code of Virginia. None of the named defendants in this action took any steps to defend or indemnify RML." *Motion for Judgment*, paragraph 5. Furthermore, RML alleges it "settled the Plaintiffs' claims against it in that action, resulting in a judgment against RML in the amount of $4.0 million, representing direct damages for the repair of the Condominium Buildings." *Motion for Judgment*, paragraph 6. While RML does not specifically allege that the settlement was reasonable under all the circumstances, this Court entered a Consent Judgment Order on December 21, 2001, against RML in the amount of $4.0 million after finding that the Settlement Agreement was reasonable. *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir. 295, 296 (Norfolk 2002) (Leafe, J.). Therefore, the Court finds that under the standard of review for a demurrer, RML sufficiently alleged that it properly notified the defendants of settlement negotiations and that the Settlement Agreement was reasonable.

Third, Lowery argues that RML does not allege it paid any amount as the proximate result of any negligence or breach of any alleged contract by Lowery. RML alleges, "That judgment has since been marked satisfied by the Plaintiffs in exchange for valuable consideration and therefore RML has paid direct damages for the repair of the Condominium Buildings." *Motion for Judgment*, paragraph 6. Under Count LIV for Equitable Indemnity, "RML demands judgment against all defendants, jointly and severally, in the amount of $4 million, plus its attorney's fees and costs incurred in defending *Bay Point Condominium Association v. RML*." The actual payment rule cited by Lowery from *Allied Productions v. Duesterdick*, 217 Va. 763, 232 S.E.2d 774 (1977), has been overruled by the Supreme Court of Virginia in *Shipman v. Kruck*, 267 Va. 495, 593 S.E.2d 319 (2004). In *Kruck*, the Supreme Court

followed Justice Poff's dissent in *Duesterdick*, holding that "a client who suffers the entry of a judgment against him indeed suffers a legal injury or damage." *Id.* at 508, 593 S.E.2d at 326. Therefore, the Court finds that RML sufficiently alleged actual damages ripe for indemnification to withstand a demurrer. The Court will consider issues involving the actual damages caused by the defendants, apportionment of damages among the defendants, and any credits that should be applied from payments from the previous litigation when raised at the proper time.

Lastly, several defendants claim that RML fails to state a claim for attorney's fees and the costs incurred by RML in connection with the defense of the previous litigation, *Bay Point Condominium Association v. RML*. The general rule is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party. *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987). There are, however, certain exceptions to this rule. The Supreme Court of Virginia has held that a party, required to act in the protection of his interests by bringing or defending an action against a third person, may recover attorney's fees incurred in that action against the original entity or person who breached a duty owed. *Patel v. Anand, L.L.C.*, 264 Va. 81, 87, 564 S.E.2d 140, 144 (2002); *Prospect Development Co. v. Bershader*, 258 Va. 75, 92, 515 S.E.2d 291, 301 (1999); *Fidelity Nat'l Ins. Co. v. Southern Heritage Ins.*, 257 Va. 246, 253-54, 512 S.E.2d 553, 557-58 (1999); *Owen v. Shelton*, 221 Va. 1051, 1055-56, 277 S.E.2d 189, 192 (1981); *Hiss v. Friedberg*, 201 Va. 572, 577-78, 112 S.E.2d 871, 875-76 (1960). The Court finds that RML's claim for attorney's fees from the previous litigation falls under this exception.

## G. Fraud

Greenwich filed a demurrer to RML's cause of action for actual fraud and constructive fraud in Count LVI of the Motion for Judgment. *See Motion for Judgment*, paragraphs 407-13.

A plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Richmond Metropolitan Auth. v. McDevitt Street Bovis*, 256 Va. 553, 557-78, 507 S.E.2d 344, 346 (1988). Constructive fraud requires proof, also by clear and convincing evidence, that a false representation of a material fact was made innocently or negligently and the injured party was damaged as a result of . . . reliance upon the

misrepresentation. *Id.* 507 S.E.2d at 347 (citations omitted). Furthermore, a claim of fraud must be pleaded with particularity. *See Mortarino v. Consultant Eng'g Services*, 251 Va. 289, 467 S.E.2d 778 (1996).

Greenwich argues that the representations and/or statements alleged to have been made constitute opinions, "puffery," or "seller's talk," as opposed to material facts.

"It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion. The mere expression of an opinion, however strong and positive the language may be, is no fraud. Such statements are not fraudulent in law, because . . . they do not ordinarily deceive or mislead. Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural, or exaggerated, go for nothing, though they may not be true, for a [person] is not justified in placing reliance upon them." *Tate v. Colony House Builders, Inc.*, 257 Va. 78, 82, 508 S.E.2d 597, 599 (1999) (internal citations omitted). The Supreme Court of Virginia has not established a bright line test to ascertain whether false representations constitute matters of opinion or statements of fact. Instead, "each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 562, 95 S.E.2d 207, 211 (1956).

The Court examined the following alleged statements made by Greenwich: "[d]uring the meeting, the employee or agent represented that Greenwich had windows that were suitable for use on the Condominium Buildings; that were much better than the windows that were being used; that were of merchantable quality; and that would perform better than the industry standards on the Condominium Buildings given the location of the Buildings." *Motion for Judgment*, paragraph 403. The Court finds that the alleged statement was made between knowledgeable businessmen in the context of a sale of goods to a sophisticated buyer of construction materials. Taking into consideration the nature of the representations and the surrounding circumstances, the alleged statements by the Greenwich employee or agent made in an attempt to sell their windows at the project site are more in the nature of "puffing," "seller's talk," or opinion and cannot form the basis of an action for fraud. *See Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 110, 540 S.E.2d 134, 142 (2001) (Puffing is "the expression of an exaggerated opinion, as opposed to a factual representation, with the intent to sell a good or service."); *see also Lowell A. Stanley, P.C. v. Danka Bus. Sys.*, 57 Va. Cir.

290 (Norfolk 2002) (Griffith, J.). Thus, the Court finds that RML failed to allege false representations of a material fact.

Greenwich also argues that RML failed to allege essential facts from which it can be concluded that RML reasonably relied to its detriment upon any alleged representations, statements, or advertising made by Greenwich. In its Motion for Judgment, RML alleges it "relied upon the false representations of Greenwich in purchasing the windows to its detriment." *Motion for Judgment*, paragraph 412. Further, RML alleges, "[t]hat these statements were made with the intent to have RML rely upon them and with the intent to make a sale of windows to RML." *Motion for Judgment*, paragraph 409. As stated above, "[s]tatements which are vague and indefinite in their nature and terms, or are merely loose, conjectural, or exaggerated, go for nothing, though they may not be true, for a [person] is not justified in placing reliance upon them." *Tate*, 257 Va. at 82, 508 S.E.2d at 599. Thus, the Court finds that RML failed to allege *reasonable* detrimental reliance for a cause of action of fraud.

Greenwich lastly argues that RML fails to meet the particularity requirement for pleading fraud because RML fails to identify the name of the Greenwich employee or agent and fails to give a rough time period of the alleged meeting at the project site. RML argues that it is not required to name all the specific details to set forth a claim of fraud with sufficient particularity. Greenwich relies on *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978). In *Tuscarora*, the Supreme Court found the allegations too vague, indefinite, and conclusory to state a cause of action for fraud where they did not include the perpetrating party's name and the time and place of the alleged fraud. *Id*. at 858, 241 S.E.2d at 783 ("The identities of the agents, officers, and employees of BVA who are alleged to have perpetrated the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred."); *See also Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997) ("Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud."). Thus, RML's failure to identify the person and time frame with particularity is insufficient to meet the heighten pleading requirements for fraud.

Based upon the language used in the context and under the circumstances between knowledgeable businessmen, coupled with the lack of particularity of identifying the person or time frame, the Court finds the facts alleged in the Motion for Judgment are insufficient to state a cause of action for fraud against Greenwich. Thus, Greenwich's demurrer to Count LVI is sustained without leave to amend the Motion for Judgment.

*H. Express Warranty*

In its Motion for Judgment, RML alleges breach of express warranty in Count LV against Barbini and in Count LVI against Greenwich. *Motion for Judgment,* paragraphs 394-400 and 401-06. Barbini and Greenwich filed demurrers to these counts for breach of express warranty.

The motion for judgment must set forth the essential facts of a claim, not mere conclusions of law. *Pulte Home Corp.,* 265 Va. at 524, 579 S.E.2d at 190-91. Va. Code Ann. § 8.2-313 provides as follows:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

In RML's Motion for Judgment, it alleges, "[a]s part of its contract with RML, Barbini expressly warranted that its services would be performed in a workmanlike and professional manner." *Motion for Judgment,* paragraph 396. Barbini coupled a motion craving oyer to its demurrer, requesting RML to produce any written warranty given by Barbini. On September 27, 2004, this Court ordered RML to produce any written warranty given by Barbini. RML responded by providing dozens of Order forms, Purchase Order forms, copies of RML's checks paid to Barbini, and one proposal for the installation of

decking. The only language resembling an express warranty was located in the proposal for decking, which by its terms was limited to work to be performed on five decks. In that proposal, Barbini stated that, "[a]ll labor is guaranteed to be as specified, and the above work to be performed in a professional manner in accordance with the drawings and/or specifications submitted for the above work." *See* RML's Response to Barbini's Motion Craving Oyer (Barbini proposal dated August 29, 1995). The Court finds that this statement is sufficient to allow RML to proceed on a breach of express warranty claim for the work specified in Barbini's proposal dated August 29, 1995.

RML's allegation of breach of express warranty against Greenwich is based on the same alleged representations made during the meeting with the Greenwich employee or agent at the project site as were alleged in the fraud claim against Greenwich, discussed *supra*. *See Motion for Judgment*, paragraphs 402-04. RML alleges that, "[d]uring the meeting, the employee or agent represented that Greenwich had windows that were suitable for use on the Condominium Buildings; that were much better than the windows that were being used; that were of merchantable quality; and that would perform better than the industry standards on the Condominium Buildings given the location of the Buildings." *Motion for Judgment*, paragraph 403. While RML does not provide the name of the employee or agent or give the exact date when such statements were made, there is no heightened pleading requirement for a cause of action for breach of an express warranty, unlike what is required for pleading fraud.

Greenwich reiterates its argument that the representations and/or statements alleged to have been made constitute opinions, "puffery," or "seller's talk," as opposed to material facts. According to Va. Code Ann. § 8.2-313(2), "a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." For the same reasons stated in the discussion under the demurrer to RML's fraud count, the Court finds the allegations in RML's Motion for Judgment are more in the nature of "puffery," "seller's talk," or opinion and cannot form the basis of an express warranty. Therefore, Greenwich's demurrer to Count LVI is sustained without leave to amend the Motion for Judgment.

### III. The Special Pleas

#### A. The Standard for a Special Plea

A special plea is a defensive pleading that reduces the litigation to a single issue which, if proven, creates a bar to the plaintiff's right of recovery.

*Cooper Industries v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 585 (2000). The party asserting a special plea bears the burden of establishing the defense. *Id.* at 594, 537 S.E.2d at 584. Where no evidence is taken in support of a special plea, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. *Lostrangio v. Laingford*, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001). Therefore, for purposes of the special pleas, the Court deems true those facts stated in RML's Motion for Judgment. *Id.*

### B. Statute of Limitations

Several of the defendants have filed special pleas and/or demurrers arguing RML's claims are barred by the statute of limitations ("SOL"). These parties include East Coast, Eastern, Greenwich, Lincoln, and Lowery. However, in a reply memorandum, East Coast conceded that the SOL was tolled during the pendency of the previous litigation. The Court will consider the SOL arguments as special pleas. *See* Va. Code Ann. § 8.01-235 ("No statutory limitation period shall have jurisdictional effects and the defense that the statutory limitation period has expired cannot be set up by demurrer.").

Actions for contribution and indemnification are governed by Va. Code Ann. § 8.01-246(4) and must be commenced within three years after the accrual of the cause of action. *See Gemco-Ware, Inc. v. Rongene Mold & Plastics*, 234 Va. 54, 59, 360 S.E.2d 342 (1987). The accrual of a cause of action for indemnity is best linked to the time when the indemnitee was injured, rather than when the original plaintiff was injured. *See Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir. 295 (Norfolk 2002) (Leafe, J.); *see also* Va. Code Ann. § 8.01-249(5) (Actions for contribution or indemnification do not accrue until after the contributee or indemnitee has paid or discharged the obligation.).

In the instant case, RML was injured when it made payment to the original plaintiffs in settlement of the claims asserted against it. *Bay Point Condominium Association, Inc., et al. v. RML Corp. et al.*, 57 Va. Cir. 295, 321 (Norfolk 2002) (Leafe, J.). The fact that RML instituted cross-claims and a third-party claim prior to its incurring actual injury is of no consequence. *Id.*; *see* Va. Code Ann. § 8.01-281(A) (2001) (stating that a cross-claim or third-party claim "may be based on future potential liability" and it is "no defense thereto that the party asserting such claim, counterclaim, cross-claim, or third-party claim has made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence."). Thus, the SOL had not begun to run when the original third-party claims against the defendants were filed. The

later voluntary nonsuit of the defendants further tolled the SOL for six months. *See* Va. Code Ann. § 8.01-229(E)(3). Therefore, the timely re-filing by RML of the claims against the defendants within six months satisfied the SOL in this case.

Based on the above reasoning, the Court finds that the SOL does not bar RML's claims. Therefore, the defendants' special pleas are overruled.

## C. Statute of Repose

Several of the defendants have filed special pleas and/or demurrers arguing RML's claims are barred by the statute of repose ("SOR"). These parties include: East Coast, Eastern, Greenwich, Lincoln, Lowery, McDaniels, and Patriot. The Court will consider the SOR arguments as special pleas. *See* Va. Code Ann. § 8.01-235 ("No statutory limitation period shall have jurisdictional effects and the defense that the statutory limitation period has expired cannot be set up by demurrer.").

Va. Code Ann. § 8.01-250 provides, in pertinent part, "[n]o action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury . . . more than five years after the performance or furnishing of such services and construction." The defendants argue that by its terms, Va. Code Ann. § 8.01-250 applies to indemnity claims for property damage and, because an indemnity claim must arise from a contractual relationship, it must therefore apply to contract claims. However, as discussed *supra*, equitable indemnification (i.e., non-contractual indemnification) is viable in Virginia.

No reported case has held that the SOR applies to actions *ex contractu*, but several decisions have held that the SOR is restricted by its terms to actions *ex delicto*. The Supreme Court of Virginia has recognized this interpretation of Va. Code § 8.01-250 in *dicta*. *See Tate v. Colony House Builders, Inc.*, 257 Va. 78, 85, 508 S.E.2d 597, 601 (1999); *School Bd. of City of Norfolk v. United States Gypsum Co.*, 234 Va. 32, 37-38, 360 S.E.2d 325, 327-28 (1987). Judge Everett Martin has similarly ruled in *Burger Buster, Inc. v. Ratley Construction Co.*, 45 Va. Cir. 133 (Norfolk 1998) (Martin, J.). *See also Stone Ridge Condo Unit Owners' Assn v. J. M. Turner and Co.*, 62 Va. Cir. 280 (Nelson 2003); *Beckner v. Twin City Fire Ins. Co.*, 58 Va. Cir. 544 (Roanoke 2002); *Tycon Tower I Investment, Limited Partnership v. Glen Construction Co.*, 1995 Va. Cir. LEXIS 1455 (Fairfax 1995). The Fourth Circuit Court of Appeals has also held this statute applies to tort actions. *See*

*Delon Hampton & Assocs. v. Washington Metro. Area Transit Auth.*, 943 F.2d 355, 362 (4th Cir. 1991); *Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1162 (4th Cir. 1983).

Based on this weight of authority and the plain reading of the terms of Va. Code Ann. § 8.01-250, the Court finds that the SOR does not apply to actions *ex contractu*. As Judge Martin ruled in *Burger Buster, Inc.*:

> Had the General Assembly intended § 8.01-250 to apply to actions for breach of contract, it could have added "breach of contract" to the enumerated actions in the statute or it could have omitted the words "to recover for any injury to property, real or personal, or for bodily injury or wrongful death." It did neither. *Inclusio unius est exclusio alterius.*

*Burger Buster, Inc.*, 45 Va. Cir. at 135. Therefore, the Court overrules the defendants' special pleas on the SOR, as RML's remaining causes of actions against the defendants are actions *ex contractu*.

As the Court finds that the SOR does not apply to RML's causes of action, the issue of whether the SOR was tolled by Va. Code Ann. § 8.01-229(E)(3) is made moot.

## IV. Conclusion

For the above stated reasons, this Court rules as follows.

1. The Court grants RML's motion for reconsideration or clarification of the December 3, 2004, letter opinion. The Court finds that the general language in paragraph 4 of the Motion for Judgment, coupled with the specific language in Count II, Count VI, and Count XIV sufficiently alleged privity against Greenwich and Eastern. Thus, the negligence counts against Greenwich and Eastern are now moved into the category with privity defendants and, as such, the demurrers are sustained with leave to amend. RML may file an Amended Motion for Judgment respecting those counts within fourteen business days of the Order incorporating the Court's decisions as announced in this letter opinion.

2. The Court overrules the demurrers based on Rule 1:4(d) of the Rules of the Virginia Supreme Court.

3. The Court sustains the demurrers to RML's breach of the VCPA cause of action. Thus, Count III (Lincoln and Eastern), Count VII (Patriot and Greenwich), Count XI (Peachtree), and Count XV (Greenwich) are dismissed without leave to amend the Motion for Judgment as to those counts.

4. The Court sustains the demurrers to RML's breach of U.C.C. Implied Warranties cause of action as to Count I (Lincoln) and Count V (Patriot) to the extent that such demurrer is based on RML's claim for consequential economic losses. However, the demurrer is overruled to the extent that RML seeks direct economic losses as measured by Va. Code Ann. § 8.2-714(2). The Court overrules the demurrers to RML's breach of U.C.C. Implied Warranties cause of action as to Count I (Eastern), Count V (Greenwich), Count IX (Peachtree), and Count XIII (Greenwich).

5. The Court sustains the demurrers to RML's breach of implied contractual indemnity cause of action. However, RML may proceed with its claim for indemnity as the relief sought under its breach of implied warranties cause of action.

6. The Court overrules the demurrers to RML's equitable indemnity cause of action in Count LIV.

7. The Court sustains the demurrer to RML's fraud cause of action against Greenwich in Count LVI without leave to amend the Motion for Judgment.

8. The Court overrules Barbini's demurrer to RML's breach of express warranty cause of action in Count LV. However, RML may only proceed against Barbini for the specific work warranted as addressed in this letter opinion. The Court sustains Greenwich's demurrer to RML's breach of express warranty cause of action in Count LVI without leave to amend the Motion for Judgment.

9. The Court overrules the special pleas of the statute of limitations.

10. The Court overrules the special pleas of the statute of repose.